## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

KATHRYN K. STRONG, an individual,

        Plaintiff,

   vs.

DESIGN YOUR LOBES, LLC, a Wisconsin limited liability company; JODY E. RAMMINGER,  an individual; DOES 1-10, inclusive,

        Defendants.

Case No.   22-cv-401

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Kathryn K. Strong ("Plaintiff"), by and through her attorneys, brings this action against Defendants Design Your Lobes, LLC ("DYL") and Jody E. Ramminger ("Ramminger") (DYL and Ramminger are collectively referred to herein as the "Defendants"), and alleges as follows:

## THE PARTIES

1.    Kathryn K. Strong is an individual residing in the state of Idaho and is the successor-in-interest to Harry Mason, Inc. and Harry Mason.  Plaintiff is the former wife and business partner of Harry Mason, the namesake of Harry Mason, Inc.

2.    Defendant DYL is a limited liability company organized and existing under the laws of the state of Wisconsin.  Plaintiff is informed and believes, and on that basis alleges, that DYL was formed, and is now being operated by Ramminger, who is also listed as its corporate agent.  DYL has a principal place of business located at 7781 Garnet Drive, Lodi, Wisconsin, 53555.

3.    Plaintiff is informed and believes, and on that basis alleges, that Ramminger is an individual residing in Lodi, Wisconsin.

4.      Upon information and belief, Ramminger is the sole owner, officer, director, operator and controlling force of Defendant DYL, oversees and manages all aspects of DYL's operations, and has committed the acts alleged herein in this judicial district.

5.      Plaintiff is informed and believes, and thereon alleges, that Defendants DOES 1 through 10, inclusive, are other as-of-yet-unidentified parties who have infringed upon Plaintiff's rights and have contributed to the infringement or have otherwise engaged in the wrongful acts alleged herein.  The true names of Defendants 1 through 10 are presently unknown to Plaintiff, which, therefore, sues said Defendants by such fictitious names.  Plaintiff will seek leave to amend this Complaint with their true names and capacities once ascertained.

## JURISDICTION AND VENUE

6.      This action arises under the Copyright Act of 1976, Title 17 U.S.C. § 101, *et seq*., and the Lanham Act, 15 U.S.C. §§ 1051, 1125, *et seq*.

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338, the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* and Lanham Act, 15 U.S.C. §§ 1051, 1125, *et seq*.

8.      The Court has personal jurisdiction over the Defendants because they are domiciled and residing in this state.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged herein occurred while Defendants were located in this judicial district.

## BACKGROUND FACTS

10.     Plaintiff is the successor-in-interest to all rights and assets of Harry Mason and Harry Mason, Inc., an internationally recognized designer of high fashion jewelry, including rights by assignment to the copyright and trademark registrations referenced herein.  Since its formation, Harry Mason, Inc. designed and created original and unique pieces of jewelry that enjoyed, and continue to enjoy, immense popularity among consumers.  The creative and driving force behind the ever-popular Harry Mason, Inc. products and styles, and the namesake of the

2

business, was Harry Mason.  When Mr. Mason died in 2015, all of his assets and his entire interest in Harry Mason, Inc., including all IP registrations, were transferred to Plaintiff following the probate of Mr. Mason's estate.

11.     From its formation, Harry Mason, Inc. went to great lengths to protect its unique designs, products and innovations, and to guard against the infringement and misappropriations of its works.  Harry Mason, Inc. secured trademark, copyright and patent protection for various of its designs and products.

12.     Among Harry Mason, Inc.'s catalogue of original designs are its various ear spiral earring designs (the "Subject Works").  The Subject Works are original designs created by Harry Mason himself, and other employees of Harry Mason, Inc.  A representative sampling of the Subject Works are shown below:



QB\74965543.3

 

13.     The Subject Works are protected by at least two United States Copyright Registrations, United States Copyright Registration No. VA 131-699 (the "'699 Registration"), registered on August 1, 1983 and United States Copyright Registration No. VA 1-303-291, registered on May 2, 2005 (the "'291 Registration"). The '699 Registration and the '291 Registration were assigned from Harry Mason, Inc. to Plaintiff in or about September 2017.

14.     In addition to protecting the designs of the Subject Works as set forth above, Plaintiff also owns all rights in and to the EARSPIRALS trademark, including common law rights based on use in commerce of the EARSPIRALS trademark. The foregoing trademark is protected by federal trademark registration number 3,460,488, registered July 8, 2008. A true and correct copy of the Registration record for EARSPIRALS is attached hereto as **Exhibit "1"**. The EARSPIRALS mark was originally owned by Harry Mason, Inc., but was subsequently assigned to Plaintiff in October 2017.

15.     In connection with the sale of its products, Harry Mason, Inc. sought ways to distinguish itself among other jewelry sellers and to ensure consumers could easily recognize Harry Mason, Inc.'s products. One of the ways Harry Mason, Inc. did this was by the use of unique earring placards to which Harry Mason, Inc.'s pieces were displayed and sold (the "Earring Placard"). Besides bearing the Harry Mason name, the Earring Placard incorporated distinctive design elements, including a unique rectangular size, the use of a single white band

4

across the top (which bears the Harry Mason name), the use of smaller verbiage (also in gold) appearing below and on the right side of the white band, and the use of a gold scroll pattern that artfully surrounded the Harry Mason name.  The foregoing elements are non-functional.  Below is an exemplar of the Harry Mason, Inc. earring placard:



16.     In or about October 15, 2003, Harry Mason, Inc. and Defendants agreed that Defendants would take possession of certain inventory of Harry Mason, Inc. on consignment, and sell it to consumers.  Pursuant to that agreement, Harry Mason, Inc. provided Defendants with earrings bearing the Subject Works which were the subject of the '699 Registration and the '291 Registration but retained ownership of the goods.  Defendants were to account to Plaintiff as the goods were sold and to remit a portion of the sales revenue generated from the sale of the pieces to Harry Mason, Inc.

17.     In addition to providing Defendants with the actual earrings, Harry Mason, Inc. also provided Defendants other materials related to the offering for sale and sale of the earrings, including Earring Placards bearing the artistic and design elements reflected in Paragraph 15 and unique display trees used in connection with the display and sale of the earrings.

18.     Harry Mason passed away in November of 2015.  Following his passing, Defendants and Plaintiff discussed the Harry Mason, Inc. inventory of products and Defendants' potential involvement in the liquidation of the same.

QB\74965543.3

19.     Thereafter, on or about April 21, 2017, Plaintiff and Defendants entered into another agreement.  Pursuant to this agreement, Defendants were to pay Plaintiff the sum of $10,600 for all remaining products still held by Defendants on consignment.  The effect of the agreement was to transfer title to the remaining pieces to Defendants and afford Defendants the right to sell the remaining pieces without further obligation to Plaintiff.

20.     Under both of the aforementioned agreements, Defendants were only permitted to offer for sale and sell the existing Harry Mason, Inc. pieces that were provided to Defendants by Plaintiff (and with respect to the first agreement, Harry Mason, Inc.).  Defendants were never authorized or permitted to manufacturer new products bearing the Subject Works or to use any of the Harry Mason, Inc. intellectual property in connection with any goods other than the Harry Mason, Inc. products provided to them by Plaintiff.

21.     In October of 2021, Plaintiff discovered that in addition to selling the Harry Mason, Inc. pieces obtained from Plaintiff (and Harry Mason, Inc. as related to the first agreement), Defendants were manufacturing, or causing to be manufactured, new earrings that bore the Subject Works protected by the '699 Registration and the '291 Registration the ("Infringing Products"):

 

QB\74965543.3



22.    In addition, Plaintiff discovered that Defendants had copied the Earring Placard and replaced the Harry Mason name with the DYL name.  Plaintiff is informed and believes, and on that basis alleges, that this was done for the sole and express purpose of trading off the goodwill Plaintiff (and Harry Mason, Inc. before her) had achieved and earned in the Earring Placard design.

23.    Below is an exemplar of Defendants' use of design elements that infringe upon the rights of Plaintiff in the Placard Design (the "Infringing Placard"):



7

24.     Plaintiff discovered in or about April 2022, that Defendants were attaching authentic Harry Mason, Inc. earrings to Defendants' Infringing Placards, thereby attempting pass off the authentic Harry Mason, Inc. jewelry as its own.  Below is an image of authentic Harry Mason, Inc. earrings being sold on an Infringing Placard:



25.     Defendants are also infringing upon Plaintiff's EARSPIRALS mark by using it to promote non-Harry Mason, Inc. earrings.  Attached hereto as **Exhibit "2"** is a true and correct copy of a photograph taken in April 2022 of Defendants' booth at a trade show.  The infringing use of the EARSPIRALS mark can be seen on the back wall of Defendant's booth.

26.     Defendants are also infringing on Plaintiff's EARSPIRALS Mark by displaying images featuring Plaintiff's EARSPIRALS mark on their Facebook page.  See **Exhibit "3"**.

27.     In addition to the foregoing, Defendants are continuing to use the unique earring display trees that were provided to Defendants in connection with the sale of authorized Harry Mason products.  Defendants are using the display trees in connection with the sale of earrings that did not originate from Plaintiff or Harry Mason, Inc.

28.     Defendants have covered up the Harry Mason name that was previously found on these display trees with copies of the Infringing Placard:

QB\74965543.3



29.     Plaintiff is informed and believes that Defendants' continued use of the (now modified) display trees is being done by Defendants to further trade off the goodwill of Plaintiff and Harry Mason and to deceive consumers as to the connection, affiliation or sponsorship of Plaintiff and/or Harry Mason with Plaintiff.  Defendants are displaying both authentic and infringing earrings on the display trees, which now bear only Defendants' name.  This too causes confusion as to the affiliation and/or approval of Plaintiff with the Infringing Products.

30.     Ramminger, as the sole owner and operator of DYL, personally participated in the aforementioned acts of infringement, including the manufacture, offering for sale and sale of the Infringing Products and the infringement of the EARSPIRALS mark.  Plaintiff is informed and believes, and on that basis alleges, that Ramminger used the DYL corporate form as an instrument to carry out her own willful and deliberate acts of infringement and was the moving force behind the acts of infringement and false designation of origin as alleged herein.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement)

31.     Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 through 30 as if fully set forth herein.

32.     Prior to the acts of infringement complained of herein, Defendants were provided authentic Harry Mason, Inc. jewelry pieces incorporating the Subject Works for the limited and express purpose of selling the pieces pursuant to the agreement of the parties.

33.     Defendants are not, and have never been, authorized to manufacture or cause to be manufactured, additional jewelry pieces bearing the Subject Works.  Nevertheless, Defendants have done just that, and are selling earrings which infringe upon Plaintiff's rights in the Subject Works.  Plaintiff is informed and believes, and on that basis alleges, Defendants are selling the infringing pieces at art fairs and jewelry shows, including some that have occurred in the state of Wisconsin.

34.     Defendants' sale of earrings bearing Plaintiff's copyrighted designs to third parties was not approved or authorized by the Plaintiff.

35.     Defendants infringed Plaintiff's rights in the Subject Works by selling, offering for sale, displaying and/or distributing earrings incorporating or bearing the Subject Works without Plaintiff's authorization.

36.     Due to Defendants' acts of infringement, Plaintiff has suffered damages in an amount to be determined at trial.

37.     Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained profits that it would not otherwise have realized but for its infringement of the Subject Works.  Plaintiff is entitled to disgorgement of Defendants' profits attributable to the infringement of the Subject Works in an amount to be established at trial.  At its option, Plaintiff is also entitled to an award of statutory damages.

38.     Plaintiff is informed and believes, and on that basis alleges, that Defendants' acts of infringement were undertaken with actual or constructive knowledge of Plaintiff's rights.  As

QB\74965543.3

a result, Defendants' acts of copyright infringement were, and are, intentional, malicious, willful and undertaken without regard to Plaintiff's rights.

**SECOND CLAIM FOR RELIEF**
**(Trademark Infringement)**

39.     Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 through 38 as if fully set forth herein.

40.     Plaintiff uses its EARSPIRALS mark in connection with the sale of goods. Plaintiff's EARSPIRALS mark is valid and subsisting.

41.     By virtue of their prior working relationship, Defendants were fully aware and had actual notice, in addition to the constructive notice associated with Plaintiff's trademark registration, of the EARSPIRALS mark and Plaintiff's right therein.

42.     Despite the foregoing knowledge, Defendants are using a mark in connection with its sales of non-Harry Mason, Inc. jewelry that is identical to Plaintiff's EARSPIRALS mark.

43.     Defendants' unauthorized use of a mark that is identical to Plaintiff's trademark is willful, intentional and intended to trade off Plaintiff's goodwill.

44.     Defendants' continued use of a mark that is identical to Plaintiff's EARSPIRAL mark in connection with the offering for sale and sale of Defendants' products is likely to cause confusion in the marketplace, cause mistake, or deceive consumers into believing that Plaintiff authorizes or sponsors Defendants non-Harry Mason, Inc. products.

45.     Defendants' conduct as alleged herein infringed on Plaintiffs' rights in the EARSPIRALS mark.

46.     By virtue of its knowledge of Plaintiff and the EARSPIRALS mark, Defendants' continued infringement is willful and intentional and undertaken without regard for the harm that such infringement would cause Plaintiff.

47.     Plaintiff is informed, and based thereon alleges, that unless restrained, Defendants will continue the acts complained of herein, all to Plaintiff's irreparable damage. It will be extremely difficult to ascertain the amount of compensation that would afford Plaintiff adequate

11

relief therefor, and unless Defendants are preliminarily and permanently enjoined from using marks that are identical to Plaintiff's EARSPIRALS mark, or any mark that is confusingly similar thereto, Plaintiff will be irreparably damaged.

## THIRD CLAIM FOR RELIEF
### (Trade Dress Infringement)

48.    Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 through 47 as if fully set forth herein.

49.    Harry Mason, Inc. offered for sale, sold, marketed and advertised its earrings using the Earring Placard pictured herein since at least the 1980's.  All of Harry Mason, Inc.'s rights in the Earring Placard have been transferred to Plaintiff.

50.    Plaintiff is informed and believe, and based thereon allege, that consumers recognize the unique artistic characteristics and features of the Earring Placard as representing that the earrings attached thereto come from an identifiable and unique source, that is Harry Mason, Inc.

51.    Plaintiff is informed and believes, and based thereon alleges, that Defendants' Infringing Placard uses the same look and feel of Plaintiff's Earring Placard and is therefore likely to cause confusion as to the source of the earring attached thereto.

52.    Plaintiff is informed and believes, and based thereon alleges, that Defendants were aware of the considerable commercial success of Harry Mason, Inc.'s products sold using the Earring Placard, and that Defendants willfully used the same look and feel to create the Infringing Placard in a manner likely to cause confusion, or to cause mistake, or to deceive customers into believing that Defendants' Infringing Products are associated with or authorized by Plaintiff.

53.    The acts of Defendants as alleged herein constitutes trade dress infringement in violation of 15 U.S.C. § 1125.

54.    The acts of Defendants, if not enjoined, will continue.

QB\74965543.3

55.     Plaintiff has suffered and continue to suffer damages in an amount to be proven at trial.

56.     Pursuant to 15 U.S.C. § 1117 and 1125, Plaintiff is entitled to recover damages, profits made by Defendants, in addition to costs of this action.

### FOURTH CLAIM FOR RELIEF
### (False Designation of Origin)

57.     Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

58.     In connection with the Defendants' sale of its Infringing Products, Defendants utilize false designations of origin and false and misleading descriptions of fact related to the source of the goods being sold and their association with the Plaintiff or Harry Mason.

59.     Defendants' use of false designations of origin and false and misleading descriptions of fact is likely to cause confusion and to deceive consumers as to the affiliation, connection or association of Defendants with Plaintiff or Harry Mason.  This includes the use of the Harry Mason name and "Harry Mason Designer Jewelry," as reflected in **Exhibit "2"** hereto.

60.     Defendants' use of false designations of origin and false and misleading descriptions of fact is also likely to cause confusion and to deceive consumers as to the origin, sponsorship or approval of Defendants' goods by Plaintiff or Harry Mason.

61.     By reason of the foregoing, Defendants are liable to Plaintiff for: (a) an amount representing Plaintiff's damages; (b) Defendants' profits; and (c) reasonable attorneys' fees, costs including investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants as follows:

1.      Finding that Defendants have infringed upon Plaintiff's trademark, copyright and trade dress rights;

QB\74965543.3

2.     That Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them, be enjoined from (a): manufacturing, offering for sale, selling, displaying, advertising, distributing or otherwise trafficking in any product that infringes upon Plaintiff's rights in the Subject Works; (b) selling, manufacturing, distributing, advertising, or publicizing any goods or services using any mark which is identical to Plaintiff's EARSPIRALS mark, or any other mark, name, symbol, or logo that is a reproduction, counterfeit, copy, or colorable imitation of, incorporates or is confusingly similar to, or is substantially indistinguishable from the EARSPIRALS mark; and (c) using Plaintiff's EARSPIRALS mark, or any mark confusingly similar thereto, or a false designation of origin or description, including by words or other symbols, tending to falsely describe or represent that Defendants' goods as being those of Plaintiff or Harry Mason, Inc., or that they are affiliated, sponsored or approved by Plaintiff or Harry Mason, Inc.;

3.     Ordering Defendants to deliver to Plaintiff for destruction all advertisements, promotional materials, and the like that contain or feature the mark used by Defendants which is identical to the EARSPIRALS mark, or any other trademarks, names or logos, that are a counterfeit, copy, or colorable imitation of, confusingly similar to, or substantially indistinguishable from the EARSPIRALS mark, as permitted under the Lanham Act, 15 U.S.C. § 1118;

4.     Granting an award of damages to Plaintiff, as a result of Defendants' infringement of the EARSPIRALS mark, as permitted under the Lanham Act, 15 U.S.C. §§ 1114; 1116; 1117(a); 1117(c); 1125 *et seq*., and according to proof at the time of trial;

5.     That Defendants be required to account to Plaintiff for all of Plaintiff's damages resulting from Defendants' false designations of origin and false and misleading descriptions of fact undertaken in connection with the offering for sale, sale, promotion, or marketing of goods;

6.     That Defendants be required to account to Plaintiff for all profits resulting from Defendants' false designations of origin and false and misleading descriptions of fact and acts of

14

infringement undertaken in connection with the offering for sale, sale, promotion, or marketing of goods of the Infringing Products;

7.      For all general, special, consequential, incidental and other damages sustained by Plaintiff as a result of Defendants' conduct;

8.      That Plaintiff be awarded all profits and financial gains of Defendants resulting from the acts of infringement, in addition to all losses of Plaintiff, the exact sum of which will be proven at the time of trial, or if elected before final judgment, statutory damages pursuant to 17 U.S.C. §§ 101, *et seq.;*

9.      For all of Defendants' revenues, profits and other monetary gains resulting from Defendants' acts of trade dress infringement;

10.     For Plaintiff's attorneys' fees and the costs as permitted under the Copyright Act, 17 U.S.C. §§ 101, *et seq.* or the Lanham Act, 15 U.S.C. § 1117.

11.     For treble damages and other exemplary damages as may be available under the law;

12.     For pre-judgment interest as allowed by law;

13.     For an award of Plaintiff's costs of this action; and

14.     Such other relief as this Court deems just and reasonable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action on all issues so triable.

DATED:  July 22, 2022

> */s/ Gregory T. Everts*
> Gregory T. Everts
> Ellen E. Cranberg
> QUARLES & BRADY, LLP
> 33 East Main Street, Suite 900
> Madison, WI 53703
> Telephone: 608.251.5000
> Email: gregory.everts@quarles.com
> ellen.cranberg@quarles.com

15

QB\74965543.3

Matthew L. Seror (CA Bar No. 235043)
BUCHALTER
A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA  92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email:  mseror@buchalter.com

16

QB\74965543.3